J-S06024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN SEILHAMER | : | |
| | : | |
| Appellant | : | No. 570 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 10, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001171-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN PAUL SEILHAMER | : | |
| Appellant | : | |
| | : | No. 571 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 10, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002341-2022

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:　　　　　　**FILED: July 22, 2026**

Justin Paul Seilhamer ("Seilhamer") appeals from the judgments of sentence following his jury convictions for strangulation, two counts of terroristic threats, simple assault, harassment, intimidation of a witness or victim, conspiracy to intimidate a victim or witness, simple possession, and

_____

[*] Former Justice specially assigned to the Superior Court.

possession of drug paraphernalia.[1]  Because Seilhamer's claims are meritless and/or waived, we affirm.

On December 3, 2022, Seilhamer choked and slammed his ex-girlfriend, Michelle Graham ("the victim"), against a podium in a Sheetz store in Blair County.  *See* N.T., 1/23/24, at 23, 54, 67.  The victim testified Seilhamer was screaming at her, grabbed her, and threatened to kill her.  *See id*. at 68-69.  The police interviewed two Sheetz employees who stated they witnessed Seilhamer shove and strike the victim.  *See* Trial Court Opinion, 7/24/24, at 2.  The police also were able to corroborate the victim's statements that she was strangled through security videos ("the Sheetz video").  *See* N.T., 1/22/24, at 84-85.  The police found an address for Seilhamer and found him in the house, along with "several substances that appeared to be drugs and a spoon and needles in close proximity to his person."  *Id*. at 85.  The substances tested positive for fentanyl.  *See id*. at 85.  These events led to the charges at the first docket ("the assault case").[2]

Seilhamer was unable to post bail and remained incarcerated awaiting trial.  *See* Trial Court Opinion, 7/24/24, at 2.  While imprisoned, Seilhamer made a third-party call to contact the victim to intimidate her from cooperating

---

[1] *See* 18 Pa.C.S.A. §§ 2718(a)(1), 2706(a)(1), 2701(a)(1), 4952(a)(3), 903(a); 35 P.S. §§ 780-113(a)(16), 780-113(a)(32).

[2] The assault case initially proceeded on its own and was scheduled for trial in May 2023.  After selecting a jury for a trial in the assault case, Seilhamer requested more time to review the Sheetz video, and the court continued that trial.  *See* Order, 5/22/23.

with law enforcement during a trial in the assault case. ***See id***. at 3. The police obtained a recording of the phone call as well as prison surveillance footage ("the prison footage"). ***See id***. at 3. This led to the charges at the second docket ("the intimidation case"), and the Commonwealth filed a notice to try the assault and intimidation cases together. ***See*** Commonwealth's Rule 582 Notice, undated.

A jury was selected on January 8, 2024, in the joint cases. Less than two weeks later, Seilhamer filed a motion *in limine* to exclude, *inter alia*, the prison footage, arguing it was untimely and prejudicial. ***See*** Motion to Exclude, 1/19/24, at 1. Immediately preceding trial on January 22, 2024, the trial court conducted a hearing to determine the admissibility of the prison footage on January 22, 2024. During the hearing, in the context of excluding the footage, Seilhamer referenced a motion to sever, stating he had "asked to sever the trials[.]" N.T., 1/22/24, at 16. However, upon a thorough review, no written or oral motion to sever the trials appears in the record. The trial court issued an Order denying the motion to exclude the prison footage. ***See*** Order, 1/22/24. Trial proceeded that same day.

During deliberations, the jurors requested to view the Sheetz video and related stills. Seilhamer's counsel objected to an apparent proposal to have the jury rewatch the video and stills on a different television than used at trial. However, after some discussion regarding the physical limitations of the courtroom, the trial court suggested bringing the jurors up to the TV in groups of three at a time, and all counsel ultimately agreed to this plan. Seilhamer

lodged no further objections at the time, or subsequently, and the jurors viewed the Sheetz video and stills.

The jury thereafter convicted Seilhamer of the aforementioned charges. On April 10, 2024, the trial court sentenced Seilhamer to an aggregate sentence of ten to twenty years of incarceration with one year of re-entry. Seilhamer did not file post-sentence motions.

Seilhamer filed a notice of appeal on May 7, 2024. Seilhamer failed to pay the filing fee or certify his intent to seek IFP status. Thus, this Court dismissed the appeal without reviewing the merits. In March 2025, Seilhamer's previously appointed counsel filed a motion to reinstate his appellate rights *nunc pro tunc*, to which the Commonwealth did not object.[3] The trial court reinstated Seilhamer's direct appeal rights on April 7, 2025, and Seilhamer filed a notice of appeal *nunc pro tunc* on May 7, 2025.[4] Seilhamer and the trial court complied with Pa.R.A.P. 1925.

Seilhamer raises the following issues for our review:

1. Whether the sentence imposed by the trial court was manifestly excessive and unreasonable and whether the court failed to properly consider all the factors of 42 Pa.C.S.A. § 9721(b) when it imposed statutory maximum sentences on

---

[3] ***See Commonwealth v. Lantzy***, 736 A.2d 564, 568 n.3 (Pa. 1999) (explaining the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, is the proper vehicle for seeking the reinstatement of appellate rights).

[4] Seilhamer filed the *nunc pro tunc* post-sentence motion **after** filing the appeal *nunc pro tunc*. The trial court did not enter an order or otherwise address the *nunc pro tunc* post-sentence motion.

three charges and ordered all felony counts and two misdemeanor counts to run consecutively, resulting in an aggregate sentence of [ten and one-half to twenty-one] years of incarceration[?]

2. Whether the trial court erred in denying the defense's request for severance where the joint trial of the strangulation and intimidation charges resulted in prejudice to [Seilhamer], as the jury deciding the assault case was presented with evidence that he was incarcerated on the case and charged with intimidating the complainant[?]

3. Whether the trial court erred and abused its discretion in denying [Seilhamer's] pretrial motion to exclude prison-surveillance footage that the Commonwealth disclosed only after the jury had been empaneled and two business days prior to trial, in violation of Pa.R.Crim.P. 573 and [Seilhamer's] due-process right to a fair trial[?]

4. Whether the trial court erred and abused its discretion in permitting the jury, during deliberations, to view the surveillance video of the alleged assault in a manner different from its presentation at trial—specifically, by allowing jurors to move closer to the screen and thereby view the footage in an enhanced and prejudicial manner, thus denying [Seilhamer] a fair trial[?]

5. Whether the trial court erred in permitting the verdict slip to read "Super Sheetz Assault" thereby introducing highly prejudicial terminology that suggested the location and nature of the alleged incident, unduly influencing the jury and depriving [Seilhamer] of a fair and impartial verdict[?]

Seilhamer's Brief at 6-7.[5]

Seilhamer first argues the trial court abused its discretion by imposing a manifestly excessive aggregate sentence and failing to consider mitigating factors. **See** Seilhamer's Brief at 16-25; Pa.R.A.P. 2119(f). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review

_____

[5] We note with disapproval the Commonwealth did not file a brief in this case.

as of right." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [***see***] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [***see***] 42 Pa.C.S.A. § 9781(b).

***Id***. (citation omitted).

Seilhamer timely appealed and his brief includes a Rule 2119(f) statement, which states a substantial question. ***See Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014). However, we conclude this issue is waived because Seilhamer failed to preserve his sentencing issue at sentencing or in a timely post-sentence motion.

At sentencing on April 10, 2024, Seilhamer did not object specifically to the sentences. Seilhamer did not file a timely post-sentence motion. Moreover, when seeking reinstatement of his direct appeal rights, Seilhamer did not request a reinstatement of his rights to file a post-sentence motion, nor did he file a post-sentence motion *nunc pro tunc* before filing his notice of appeal. Rather, he filed a post-sentence motion for the first time more than one month after filing his notice of appeal *nunc pro tunc*. Under these circumstances, Seilhamer's post-sentence motion *nunc pro tunc* was untimely and a nullity, and we conclude he preserved no discretionary aspects of

sentencing issues. ***See Commonwealth v. Dreves***, 839 A.2d 1122, 1129 (Pa. Super. 2003); ***see also Commonwealth v. Umoh***, 311 A.3d 24, 33 (Pa. Super. 2024). Thus, his claim is waived, and we will not address it.

Next, Seilhamer argues the trial court erred in denying his request for severance of his two dockets pursuant to Pa.R.Crim.P. 583. ***See*** Seilhamer's Brief at 25-28. Our standard of review for severance claims is as follows:

> A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

***Commonwealth v. Dozzo***, 991 A.2d 898, 901 (Pa. Super. 2010) (internal citation and brackets omitted).

The comment to Rule 583 notes that "[u]nder Rule 578 (Omnibus Pretrial Motion for Relief), any request for severance must ordinarily be made in the omnibus pretrial motion or it is considered waived unless a later filing is permitted [per] Rule 579." Pa.R.Crim.P. 583 cmt. Rule 579 requires omnibus pretrial motions to be filed within the thirty days following arraignment "unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown." Pa.R.Crim.P. 579(A).

Seilhamer argues the trial court erred in denying his motion to sever because the joint trial of the assault and intimidation cases prejudiced

Seilhamer, improperly introduced propensity evidence, and introduced evidence that would have been inadmissible in an assault trial. **_See_** Seilhamer's Brief at 26, 28.

The trial court considered Seilhamer's arguments and concluded, in relevant part, they were waived:

> Although at a couple of pretrial conferences, the defense referenced an intention to file severance, no request was made either in writing or orally that [the c]ourt [could] glean from the record. Thus, [the c]ourt conclude[d] that the issue was waived for appellate review.

Trial Court Opinion, 7/24/24, at 11 (footnote omitted).

Following our review, we conclude this issue is waived. As the comment to Rule 578 notes, a motion for severance must be presented in an omnibus pretrial motion, which is required to be filed within thirty days of arraignment, unless the defendant was unaware of the grounds for severance, or the trial court has extended the time for filing for cause shown. We note that the trial court did not extend the time for filing an omnibus pretrial motion; further, counsel appeared aware of the grounds for severance given their reference to intent to file for severance. However, counsel never actually requested severance before the joint trial; no written motion appears in the record, and Seilhamer's only reference to a request for severance in his brief cites a short exchange, which occurred after jury selection and on the first day of trial, in the context of a motion to exclude the prison footage . **_See Commonwealth v. Rashid_**, 160 A.3d 838, 848 (Pa. Super. 2017) (explaining this Court cannot

consider anything that is not part of the record; if it is not in the record, it does not exist for appellate review); Seilhamer's Brief at 26 (referencing N.T., 1/22/24, at 16-17).[6]  As Seilhamer did not timely request severance, his claim that the trial court failed to grant such a motion is waived.

Next, Seilhamer asserts the Commonwealth violated its discovery obligations by failing to produce the prison footage until after the jury had been empaneled and two days before trial.  *See* Seilhamer's Brief at 28-33. Pennsylvania Rule of Criminal Procedure 573 provides, in pertinent part:

> **(B) Disclosure by the Commonwealth.**
>
> *(1) Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

_____

[6] Seilhamer's counsel stated:

> We asked to sever the trials because we knew how damning it would be in the strangulation for them to know that he is incarcerated and going to prison.  So I mean the intimidation case alone, yes, there's a lot of factors in it that the jury hears that they would not normally hear, but I mean it is still a video that we did not receive that is highly prejudicial and just not something that they would normally be privy to, and even with the audio, they don't have to know that he is in prison because of the jail call.  You can cut the first couple sentences that says this is an inmate calling from the Blair County Prison and it still does not disturb the content of the call at all.

N.T., 1/22/24, at 16-17.

* * * *

      (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Pa.R.Crim.P. 573(B)(1)(f). "[D]ecisions involving discovery in criminal cases lie within the discretion of the trial court. The court's ruling will not be reversed absent abuse of that discretion." ***Commonwealth v. Smith***, 955 A.2d 391, 394 (Pa. Super. 2008) (*en banc*) (citations omitted). Further, "[a] defendant seeking relief from a discovery violation must demonstrate prejudice[, and a] violation of discovery does not automatically entitle [an] appellant to a new trial." ***Commonwealth v. Brown***, 200 A.3d 986, 993 (Pa. Super. 2018) (internal quotation marks and citations omitted). "Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." ***Id***. (citations omitted).

      Seilhamer asserts the defense made discovery requests under Rule 573 of all the video and surveillance evidence, but the Commonwealth did not disclose the prison footage until January 17, 2024, nine days after jury selection and two business days before the scheduled trial date. ***See*** Seilhamer's Brief at 30. Seilhamer alleges he "was forced to react on the eve of trial without time to investigate the authenticity of the footage, seek expert review, or assess whether the footage was complete, accurate, or taken out of context." ***Id***. at 30. Seilhamer argues the admission of the prison footage

resulted in prejudice and denied due process. *See id*. at 32. As a remedy,

Seilhamer requests a new trial. *See id*. at 33.

> The trial court disagreed. The court explained:

> there was ample opportunity and notice provided to [Seilhamer] of the existence of th[e prison footage]. The [c]ourt further believe[d] that the criminal complaint and the incident report both document the contents of the [prison footage]. The [c]ourt . . . compared these documents with a view of the [prison footage that day] in open court in the presence of [Seilhamer]. The [c]ourt [found] it questionable that the video was not provided prior to January 17th, but even in the event that it was not[,] believe[d] that the record establishes there was no prejudice to [Seilhamer's] case in light of the prior information he had from other discovery in this matter.

Trial Court Opinion, 7/24/24, at 17 (quoting Order, 1/22/24). The court

questioned the credulity of Seilhamer's assertions that the Commonwealth did

not provide a copy of the prison footage until after jury selection; however,

the court did not expressly find that the Commonwealth had disclosed the

prison footage before jury selection. *See id*. at 16-18.

Following our review, we discern no abuse of discretion in the trial

court's decision when denying Seilhamer's motion to exclude. Preliminarily,

when the trial court repeatedly asked what prejudice he would suffer if the

court admitted the prison footage, Seilhamer emphasized that the late

disclosure of the prison footage was prejudicial him because it showed him in

prison. *See* N.T., 1/22/24, at 14-15.[7] In responding to these arguments, the

---

[7] This overlaps with his argument regarding severance. *See supra*, n.6.

trial court noted that the criminal complaint and incident report had summarized the contents of the prison footage and those summaries were consistent with footage itself. **See** N.T., 1/22/24, at 10-11; Criminal Complaint, No. 1171-2023, 5/2/23, Affidavit of Probable Cause, at 1 (summarizing contents of the prison footage and noting that a DVD would be available for discovery). Under comparable circumstances, this Court has refused to find an abuse of discretion in admitting the challenged evidence where no unfair surprise resulted from the belated disclosure of the evidence. **See Commonwealth v. Lynch**, 242 A.3d 339, 350 (Pa. Super. 2020) (concluding no relief was due on claim that the trial court abused its discretion in admitting a recorded prison phone call that the Commonwealth did not disclose until four days before trial; the defendant failed to specify how his trial strategy allegedly would have changed, knew early on that the Commonwealth had the recording, and the defendant, as a participant on the call, knew what was said).

To the extent Seilhamer now argues on appeal that he needed more time to investigate the prison footage, he did not raise these arguments in the trial court, and we decline to consider new theories for relief not preserved in the trial court. **See** Pa.R.A.P. 302(a).[8] Thus, Seilhamer failed to show

_____

[8] In any event, Seilhamer offers no support for his generalized claims that the prison footage was not what the Commonwealth purported it to be or that it was somehow incomplete, inaccurate, or showed events out of context. **See**
*(Footnote Continued Next Page)*

prejudice and no relief is due. **See Commonwealth v. Causey**, 833 A.2d 165, 171 (Pa. Super. 2003).

In his fourth issue, Seilhamer challenges the trial court's decision to allow jurors to move closer to the court's television during deliberations. **See** Seilhamer's Brief at 33-38. Before reviewing the merits of Seilhamer's claim, we must consider whether the claim is preserved for appellate review. Issues not raised in the trial court are waived and cannot be raised for the first time on appeal. **See** Pa.R.A.P. 302(a); **see also Commonwealth v. Ramos**, 231 A.3d 955, 957 (Pa. Super. 2020) (stating "[i]t is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal") (internal quotation marks and citations omitted). Seilhamer represents that the defense objected to the trial court allowing jurors to leave their assigned positions during trial and approach the television to view the Sheetz video and related still images. **See** Seilhamer's Brief at 34. However, a review of the record reveals the trial court asked counsel if they agreed to allow the jurors to stand closer to the screen in groups of three to view the Sheetz video and still shots, to which both Seilhamer's counsel and the

---

**Commonwealth v. Rodriguez**, 346 A.3d 331, 2025 WL 2218901, at *8-9 (Pa. Super. 2025) (non-precedential memorandum), *appeal denied*, 620 MAL 2025, 2026 WL 877321 (Pa. Mar. 31, 2026).

Commonwealth replied, "Yes, Your Honor." N.T., 1/24/24, at 141.[9] Thus, because Seilhamer agreed to the method ultimately used by the trial court to permit the jury to re-view the Sheetz video, this claim is waived.

In his final issue, Seilhamer asserts the verdict slip's use of "Super Sheetz Assault" tainted deliberations and was prejudicial. **See** Seilhamer's Brief at 38-41. Before reviewing the merits of Seilhamer's claim, we must again consider whether the claim is preserved for appellate review. To preserve a claim challenging the verdict slip itself, Seilhamer had to contemporaneously object to the verdict slip. **See Commonwealth v. Nellom**, 234 A.3d 695, 704 (Pa. Super. 2020) (holding failure to contemporaneously object to verdict slip operates as a waiver). Seilhamer not only did not object to the verdict slip, but following revisions to the verdict slip, his counsel represented that she revised the verdict slip and reviewed it with him, and she did not correct the trial judge who stated "everyone appears to be satisfied that the verdict slip is consistent with the law and what is required." N.T., 1/24/24, at 13. Accordingly, Seilhamer has waived his final claim.

Judgments of sentence affirmed.

---

[9] Although Seilhamer points to a page where he allegedly preserved his objection, that page indicates he only objected to the Commonwealth's request to have the jury re-view the Sheetz video on a different television than used at trial. **See** N.T., 1/24/24, at 138.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  7/22/2026